## CLEMENS KLEIN

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 15, 1885.*

1. CRIMINAL LAW—*alibi.* Where the proof clearly shows the commission of a robbery, and the defendant is identified as the guilty party by two witnesses, and an *alibi* is relied upon in defence, which is not very satisfactorily proved, giving allowance for differences in time and the opinions of witnesses of the time when the offence was committed, and owing to the proximity of the place where the *alibi* is shown to the place where the robbery occurred, a judgment on a verdict finding the defendant guilty will not be reversed.

2. A defendant, to establish an *alibi*, must not only show he was present at some other place about the time of the alleged crime, but also that he was at such other place such a length of time that it was impossible for him to have been at the place where the crime was committed, either before or after the time he was at such other place.

3. SAME—*robbery—sufficiency of proof of force.* On the trial of one for robbery, the prosecuting witness testified to the taking from her a hand-bag containing money, and that the hand-bag was taken with such force that it bruised her arm, and it was lame for several days: *Held,* that this testimony most clearly showed that the taking was by force, and that the act was a robbery.

4. NEW TRIAL—*newly discovered evidence.* Where affidavits relied on for a new trial in a criminal case as showing newly discovered evidence, contained much irrelevant matter, and such facts as had a bearing on the case were not of a conclusive character, and cumulative, merely, it was *held,* no error to refuse a new trial on them.

5. Where the facts relied on as newly discovered evidence on a motion for a new trial, are such as the party or his counsel, by ordinary prudence and diligence, should have learned before the trial, and proved, and no sufficient excuse is shown for not proving them, a new trial will not be granted.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Messrs. MOORE & PURNELL, for the plaintiff in error.

Mr. GEORGE HUNT, Attorney General, for the People.

Mr. Justice Mulkey delivered the opinion of the Court:

On the 17th of January, 1884, Clemens Klein, plaintiff in error, impleaded with Henry Tiederman, was convicted in the Criminal Court of Cook county, on a charge of robbery, the jury fixing the time of his confinement in the penitentiary at eight years. Motions for a new trial and in arrest of judgment having severally been made and overruled, the court, on the 4th of February following, entered final judgment upon the verdict, to reverse which the accused has brought the present writ of error.

Eva Reed, the prosecuting witness, testified, in substance, that in the afternoon of October 11, 1883, between the hours of one and two o'clock, while walking east on Garfield avenue, in the outskirts of the city of Chicago, she saw both defendants standing near an alley, in front of her, and on the same side of the street she was walking; that she noticed no one about there but them, and as she came near them they were looking across the street as if hunting for some number of a house, one of them remarking, "There is 239 across the street;" that upon reaching them, they separated, so that she had to pass between them, and in doing so, Tiederman grabbed her hand-bag with both his hands and pulled it off the arm on which it was hanging; that upon thus jerking it from her arm, they both ran off, Tiederman taking it with him; that it contained her pocket-book, in which was some change, and seven dollars in United States Treasury notes and National bank notes, belonging to her; that the hand-bag was taken with such force that it bruised her arm, and that it was lame for several days. On cross-examination she stated further: "It was my impression that the handle was broken, or the ring that fastened on the handle, and that let it off my arm. I am positive defendant Klein is one of the men who robbed me. I have no doubt about it. * * * I had a good opportunity to see him as I walked from the

corner of Orchard street.  *  *  *  I was not very much frightened when I ran. I called out, 'Police! Stop thief!' They looked over their shoulders as they ran, and I saw their faces. I reported at the police station. At four o'clock I saw defendant Klein, and said he was one who robbed me."

George Hopkins, a boy twelve years of age, testified that he was, at the time of the occurrence, playing cricket in a back yard near by; that he heard Miss Reed scream, ran to the alley, and saw both defendants running toward Center street, through the alley; that they were running toward him, and ran past him; that he saw defendant Klein at the police station next day, and knew him as soon as he saw him.

These witnesses are in no manner impeached. The defence, to the clear case thus made by the People, is an alleged *alibi.* The testimony of five witnesses, besides the accused, is relied on to establish it. The witnesses are, John Quinn, Nora Quinn, Minnie Reinkey, Kittie Arnold, and Charles Tennis. The claim of the accused is, that at the time the offence is alleged to have been committed, namely, some time between one and two o'clock P. M., he was in the saloon of witness John Quinn, at No. 167 Larrabee street. This witness swears that Klein came to the saloon at one o'clock, exactly. No other witness fixes the time of his arrival there, though the accused himself testifies he was there at one. Minnie Reinkey swears to have seen Klein, in company with Tennis, going south on Larrabee street, a little *after* one o'clock, and if this is true, Klein could not have been at the saloon at that hour, as stated by John Quinn and the accused. The more important inquiry, however, relates to the time when Klein left the saloon. Nora Quinn, who was at the time tending bar for John Quinn, swears that she saw defendant there from half-past one o'clock until after two. John Quinn left the saloon, as he testifies, at half-past one, and consequently he could not know, nor did he pretend to state, when the accused left. Neither Minnie Reinkey nor

Kittie Arnold saw him at the saloon at all, and knew nothing as to the time of his leaving. The only other witness, then, outside of the accused himself, is Tennis, who testified: "We left the saloon near two o'clock. I looked at my watch at 1:40, and soon afterward we left." The plain inference from the testimony of this witness is, they left some time before two o'clock.

Of the five witnesses relied on to establish an *alibi*, but one of them states the accused was at the saloon as late as two o'clock; one of them left the saloon a half hour before that time; two do not know even of his being there, and the remaining one swears, in effect, he left there before that time. Now, when we add to this the proximity of the saloon to the place where the crime was committed, the distance between the two places being fixed by a police officer at three-quarters of a mile, and then make reasonable allowance for differences in time-pieces and in opinions respecting the time, the proof of an *alibi* is anything but satisfactory. So far as the case made by the People is concerned, the particular hour at which the robbery occurred is not important. That it did occur is not questioned, and the prosecuting witness herself may have been mistaken as to the exact time, without at all affecting her testimony in other respects. Supposing the offence to have occurred twenty or thirty minutes later than she supposed, it is manifest the defence of an *alibi* has utterly failed. To have made this defence anything like complete, the accused should have gone a little farther, and accounted for himself at least for a short while after two o'clock, so as to have covered differences in time-pieces, and in opinions of witnesses in respect to the time. It is a significant fact that outside of the accused himself, no witness pretends to account for the whereabouts of the accused immediately after two o'clock. But waiving all these considerations, and assuming the proof in support of the *alibi* was twice as strong as it is, we would still not feel at liberty to disturb the conviction, for, assuming

the *alibi* was clearly proven by the defendant's witnesses, the fact would still remain that the accused is as clearly shown to be guilty by the testimony of the People's witnesses, thus leaving an irreconcilable conflict in the testimony, which the jury alone had the right to settle. It has been so often said, in effect, by this court, that it is the peculiar province of the jury to pass upon the credibility of witnesses, and to determine on which side of the controversy the truth lies in case of an irreconcilable conflict between witnesses, it is hardly necessary to repeat it here. It is the fundamental principle that underlies the right of trial by jury, and any substantial departure from it would necessarily impair the right itself.

Some complaint is made of the People's instructions, but we see no substantial objections to them.

The point is also made, that the evidence fails to show the taking was forcible, force being a necessary element in the crime of robbery. We are unable to perceive the slightest foundation for this claim. The prosecuting witness states, as we have already seen, *"the hand-bag was taken with such force that it bruised my arm, and it was lame for several days."* In the face of this unequivocal statement, it is difficult to conceive upon what theory counsel can maintain there has been any failure to make out the case, so far as the question of force is concerned. There is clearly nothing in the point.

The only remaining matter to be noticed is the refusal of the court to grant a new trial on the ground of newly discovered evidence. The motion for a new trial, so far as it is based upon alleged newly discovered evidence, is supported by numerous affidavits. Three of the affiants, including the accused, were witnesses for the defence; three others were relatives of the defendant, and besides these there were several others. We can not stop to consider these affidavits in detail. Much of the matter contained in them is irrelevant and unimportant, and consequently affords no ground for a new trial. As to such facts in the affidavits as have a bearing

on the case, none of them are of a conclusive character, and are cumulative, merely. As to others, it is apparent, from their very nature, that the defendant's counsel must, if they really existed, have known them, or might have known them by the exercise of even a small degree of prudence or skill. For illustration, it is stated in the affidavit of the accused that since the trial he has discovered from his brother-in-law, Alfred Framhold, that the evidence on behalf of the People, at the trial, to the effect that the saloon of John Quinn was only about three-quarters of a mile from the place where the offence was committed, is untrue,—that as a matter of fact it is a mile and a third, instead of three-quarters of a mile. This statement, in the light of the record before us, if accepted as true, shows a degree of culpable negligence or ignorance on the part of the counsel for the accused that is probably without a parallel. The record shows the indictment was returned on the 3d of November, 1883, the offence having been committed on the 11th of the previous month. As stated by the accused himself, on the day after the commission of the crime he retained, as an attorney, John Waggoner, who acted for him up to the 12th of December, when he declined to act for him any longer, because the defendant was unable to pay him his fees. He then employed Miss Kate Kane, as she testifies, and she continued to act for him till she was superseded by Mr. Moore, who is still his counsel. It thus appears that from the date of the crime up to the time of filing these affidavits the accused has never been without counsel, and has had, altogether, three engaged in the case, and although it further appears that during this time there have been two trials of the cause with no other defence than that of an *alibi*, yet a new trial is now asked on the ground that the defence has been taken by surprise in respect to the distance from the saloon to the place of the crime! To say that this was not known, or even that it was not particularly investigated, is, in view of the defence relied on, to impute to the defendant's

counsel, and even to the accused himself, a degree of stupidity and inexcusable negligence that taxes credulity to its utmost extent to admit for a moment. The very conception of an *alibi* is, *per se,* a conception of the distance between the scene of the offence and the whereabouts of the accused at the time it was committed. The whole strength of an *alibi,* in every case, depends entirely upon such intervening distance. To say, therefore, that it was not thought of, is simply absurd, and to say that because the accused was confined in jail the necessary evidence of the distance could not be had at either of the trials, is equally unreasonable and inadmissible, for it is manifest that proof of this fact could easily have been made while the trial was going on; and to file an affidavit, as has been done in this case, showing that the accused relied upon the testimony of the People upon this, the most important of all the facts in the defence, is but to publish the inexcusable negligence of the counsel conducting the defence. And the fact that the counsel having charge of the defence at the last trial had recently been called into the case, is no excuse whatever for relying on the People's testimony in respect to this important fact, for, as already stated, proof of it might easily have been obtained while the trial was going on, and, as has already been shown, it could not have escaped the attention of counsel without overlooking the *alibi* itself, which would have been to overlook the only defence relied upon. But to show how utterly untrustworthy this entire claim is, it is only necessary to advert to the fact that the record shows that no proof of the distance between the saloon and the place of the crime was introduced by the People until after the defence had closed! How did the defence expect to make out the *alibi* without showing the distance between the two places? It surely did not devolve on the People to make out this defence, and it is absurd to talk about relying on them to do it.

It is also alleged in the affidavit of the accused "that for five years last past he has followed the trade of a paper-

hanger, in Chicago, and bore a good name and reputation for honesty, as appears by affidavits filed,—that all these facts are true, and will be proved if a new trial is given him." Whether the defendant's good reputation is a *newly discovered fact,* does not appear.   However this may be, no reason whatever is assigned why proof of it was not made on the trial. Whether the fact, which he admits himself, of his having been previously convicted under an indictment for burglary, and sent to the house of correction for thirty days, had anything to do with the failure to offer evidence of good character, is a matter of mere conjecture.   At any rate, it was not offered, and, as already stated, the failure to do so is wholly unexplained.   While it appears from his affidavit, as above shown, that for the five years last past he followed the trade of a paper-hanger, yet in his testimony he says at the time the offence was committed he was a *street car driver!*

It is useless to pursue this matter further.   In any view that can be taken of the case made by these affidavits, when considered in connection with other parts of the record, it is singularly vulnerable, and affords no ground for granting a new trial.

The judgment will be affirmed.     *Judgment affirmed.*